IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DON BOSTON, SHARONDA JOHNSON,　§
AND SUNSHINE RANDLE,　　　　　　§
　　　　　　　　　　　　　　　　§
　　　　　　　Plaintiffs,　　　　§
VS.　　　　　　　　　　　　　　　§　CIVIL ACTION H-11-1566
　　　　　　　　　　　　　　　　§
HARRIS COUNTY, TEXAS; B.　　　　§
KATRIB, Individually; and J.　　§
DENHAM, Individually,　　　　　　§
　　　　　　　　　　　　　　　　§
　　　　　　　Defendants.　　　　§

## OPINION AND ORDER OF SUMMARY JUDGMENT

Pending before the Court in the above referenced case, alleging attempted unlawful detention without reasonable suspicion and use of excessive force in violation of the Fourth Amendment[1] and 42 U.S.C. § 1983 and assault and battery under Texas common law against Harris County Sheriff's Office Deputies B. Katrib ("Katrib") and J. Denham ("Denham"), in their individual capacities, and failure to supervise and/or train, against Harris County, Texas, are (1) a motion for summary judgment from Katrib

---

[1] Plaintiffs claim that Katrib and Denham violated their rights under the Fifth and Eighth Amendments and 42 U.S.C. § 1983, but such claims fail as a matter of law. The Eighth Amendment prohibits cruel and unusual punishment against convicted prisoners, not pretrial detainees or individuals not convicted. *Hare v. Corinth*, 74 F.3d 633, 639 (5th Cir. 1996). Nor can Plaintiffs sue Katrib and Denham under the Fifth Amendment and section 1983 because the Fifth Amendment's due process clause applies only to violations of constitutional rights by the United States or a federal actor, and not to actions of a municipal government or its employees acting under color of state law *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000); *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996).

-1-

and Denham (#42) and (2) a motion for summary judgment from Defendant Harris County, Texas (#43).

In Plaintiff Don Boston's ("Boston'") response (#52 at pp. 1-2) to Katrib's and Denham's motion, Boston states that he is abandoning his claims for unlawful detention and state-law assault and battery. However, Plaintiff Sunshine Randle ("Randle"), who is proceeding *pro se*, has made no such statement and has not filed a response to the motion for summary judgment, so the Court addresses these claims anyway.

Plaintiff Sharonda Johnson ("Johnson") has voluntarily dismissed with prejudice all her claims against Defendants. #41 and 44.

After reviewing the record and the applicable law, the Court concludes for the reasons stated below that both motions for summary judgment should be granted.

## I.  Standard of Review

Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate when, viewing the evidence in the light most favorable to the nonmovant, the court determines that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to

find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Initially the movant bears the burden of identifying those portions of the pleadings and discovery in the record that it finds demonstrate the absence of a genuine issue of material fact on which movant bears the burden of proof at trial; a "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885 (1990); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998).

If the movant meets its burden and points out an absence of evidence to prove an essential element of the nonmovant's case on which the nonmovant bears the burden of proof at trial, the nonmovant must then present competent summary judgment evidence to support the essential elements of its claim and to demonstrate that there is a genuine issue of material fact for trial. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d 698, 712 (5th Cir. 1994). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmovant may not rely merely on allegations, denials in a pleading or unsubstantiated assertions that a fact issue exists, but must set forth specific facts showing the existence of a genuine issue of

material fact concerning every element of its cause(s) of action. *Morris v. Covan World Wide Moving, Inc,*, 144 F.3d 377, 380 (5ᵗʰ Cir. 1998).  Conclusory allegations unsupported by evidence will not preclude summary judgment. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 713; *Eason v. Thaler*, 73 F.3d 1322, 1325 (5ᵗʰ Cir. 1996).

"'[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . .'" *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5ᵗʰ Cir. 1990), *quoting Anderson v. Liberty Lobby, Inc.*. 477 U.S. 242, 247-48 (1986).  "Nor is the 'mere scintilla of evidence' sufficient; 'there must be evidence on which the jury could reasonably find for the plaintiff.'" *Id., quoting Liberty Lobby*, 477 U.S. at 252.  The Fifth Circuit requires the nonmovant to submit "'significant probative evidence.'" *Id., quoting In re Municipal Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5ᵗʰ Cir. 1978), and *citing Fischbach & Moore, Inc. v. Cajun Electric Power Co-Op.*, 799 F.2d 194, 197 (5ᵗʰ Cir. 1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5ᵗʰ Cir. 1999), *citing Celotex*, 477 U.S. at 322, and *Liberty Lobby*, 477 U.S. at 249-50.

The court must consider all evidence and draw all inferences from the factual record in the light most favorable to the

nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 712-13.

It is well established in the Fifth Circuit that "[a] federal court may not grant a 'default' summary judgment where no response has been filed." *Bradley v. Chevron U.S.A., Inc.*, No. Civ. A. 204CV092J, 2004 WL 2847463, *1 (N.D. Tex. Dec. 10, 2004), *citing Eversley v. MBank of Dallas*, 843 F.2d 172, 174 (5th Cir. 1988); *Hibernia Nat. Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985). Nevertheless, if no response to the motion for summary judgment has been filed, the court may find as undisputed the statement of facts in the motion for summary judgment. *Id.* at *1 and n. 2*, citing id.; see also Thompson v. Eason*, 258 F. Supp. 2d 508, 515 (N.D. Tex. 2003)(where no opposition is filed, the nonmovant's unsworn pleadings are not competent summary judgment evidence and movant's evidence may be accepted as undisputed). *See also Unum Life Ins. Co. of America v. Long,* 227 F. Supp. 2d 609 (N.D. Tex. 2002)("Although the court may not enter a 'default' summary judgment, it may accept evidence submitted by [movant] as undisputed."); *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996)("A summary judgment nonmovant who does not respond to the motion is relegated to [his] unsworn pleadings, which do not constitute summary judgment evidence.").

## II.  Factual Allegations of

## the First Amended Original Complaint (#14)

Plaintiffs Don Boston and Sunshine Randle sue Katrib and Denham, both officers of the Harris County Sheriff's Department, in their individual capacities, and Harris County, Texas.  Plaintiffs allege that on or about January 19, 2012, they were in a vehicle in the parking lot of the Cambridge Crossing Apartments in Houston, Texas waiting for a friend when Katrib suddenly approached the vehicle and, without identifying himself, pounded on the driver's side front windshield with the butt of a gun.  Startled and confused, Boston put the car in reverse.  Plaintiffs claim that they never saw Katrib or Denham nor heard them give any orders. Neither Katrib nor Denham had a flashlight and Plaintiffs claim they were unaware of the officers' presence.  Thus Plaintiffs had no reason to stop backing out of the parking spot.

Plaintiffs assert that without warning or provocation, Katrib and Denham started shooting at their vehicle, and some bullets hit Plaintiffs.  Fearing for their lives, Plaintiffs raced out of the parking lot and called the police.  The complaint alleges that Katrib and Denham, "knowing they had just made a grave mistake," did not follow.  An ambulance met Plaintiffs along their route and took them to the hospital.  Police detained them and for the first time they were informed that Katrib and Denham were undercover police officers.

### III.   Causes of Action

Plaintiffs first claim that Defendants, jointly and severally, deprived Plaintiffs of their rights under the Fourth Amendment and § 1983 by violating their expectation of privacy and security and their right to be free from excessive force during a search and seizure by an unlawful detention[2] and by use of excessive and/or deadly force in the course of the alleged arrest and/or investigatory stop and in the officers' unlawful assault, beating and shooting of Plaintiffs.  They further claim that Harris County is liable for failing to supervise and/or train its officers. Furthermore, they claim that the County failed to discipline Katrib and Denham for their conduct, thereby sanctioning their actions and their custom, practice and/or policy (1) of using excessive and oftentimes deadly force to effect otherwise routine arrests, (2) of ignoring the serious need for training and supervision of officers in regard to reasonable use of force, and (3) of failing to adequately train and supervise its employees and officers regarding the availability of alternative ways to detain people.  Plaintiffs claim that the County had actual or constructive knowledge of each practice, custom and/or policy before this incident and of the inadequate training of its officers, but showed deliberate indifference to the risk of violating constitutional or statutory

---

[2] As noted, Boston has dropped the unlawful detention claim, but Randle has not.

rights.  Alternatively, Plaintiffs assert that the County is liable
for failing to adopt clear policies with criteria for determining
the need for, the availability of, and/or the means by which to use
force.

Second, Plaintiff Randle continues to charge Katrib and Denham
with assault and battery under Texas common law on the grounds that
they intentionally, knowingly or recklessly shot Randle and
proximately caused physical and emotional injuries to her.

Plaintiffs seek compensatory damages against Defendants
jointly and severally, and punitive damages under § 1983 against
Katrib and Denham, as well as attorney's fees under 42 U.S.C. §
1988.

### IV.  Relevant Law

Title 42 U.S.C. § 1983 does not grant substantive rights, but
provides a vehicle for a plaintiff to vindicate rights protected by
the United States Constitution and other federal laws. *Albright v.
Oliver*, 510 U.S. 266, 271 (1994).  It provides a cause of action
for individuals who have been "depriv[ed] of [their] rights,
privileges, or immunities secured by the Constitution and laws" of
the United States by a person acting under color of state law. *Id.*

Police officers may stop and briefly detain an individual for
investigative purposes based on specific and articulable facts and
rational inferences that criminal activity may be occurring.
*United States v. Abdo*, 733 F.3d 562, 565 (5th Cir. 2013), *citing*

*Terry v. Ohio*, 393 U.S. 1, 21 (1958).  Only reasonable suspicion is required to justify such an intrusion, a standard less than probable cause (required for an arrest).  *Id., citing United States v. Saunders*, 994 F.2d 200, 203 (5th Cir. 1993).  "'Whether a detention is an arrest or merely a *Terry*-stop depends on the 'reasonableness' of the intrusion under all the facts.'"  *Id., quoting U.S. v. Martinez*, 808 F.2d 1050, 1053 (1987).  "There is 'no ready test for determining reasonableness other than by balancing the need to search (or seize) against the invasion which the search (or seizure) entails.'"  *Terry*, 392 U.S. at 21, *citing Camara v. Municipal Court*, 387 U.S. at 534-37.  The reasonableness of a stop is assessed by "conducting a fact-intensive, totality-of-the circumstances inquiry" and "the information available to the officer[s] at the time of the decision to stop a person."  *Davila v. U.S.*, 713 F.3d 248, 258  (5th Cir. 2013), *citing U.S. v. Rodriguez*, 564 F.3d 735, 741 (5th Cir. 2009).  The right to make an investigatory stop "carries with it the right to use some degree of physical coercion or threat thereof to effect it."  *Davila v. U.S.*, 713 F.3d 248, 259-60  (5th Cir. 2013), *citing Graham v. Connor*, 490 U.S. 386, 396 (1989).  To determine the reasonableness of a *Terry*-stop, the court should try to put itself "in the shoes of a reasonable police officer as he or she approaches a given situation and assesses the likelihood of danger in a particular context."  *U.S. v. Rideau*, 969 F.2d 1572, 1574 (5th Cir. 1992)(*en banc*), *cited*

*for that proposition in Peterson v. City of Fort Worth, Tex.*, 588
F.3d 838, 845 (5th Cir. 2009), *cert. denied*, 131 S. Ct. 66 (2010).

"'Claims that law enforcement officers used excessive force
are analyzed under the Fourth Amendment.'" *Harris v. Serpas*, ___
F.3d ___, No. 13-30337, 2014 WL 960843, at *3 (5th Cir. Mar. 12,
2014), *quoting Mace v. City of Palestine*, 333 F.3d 621, 623 (5th
Cir. 2003).  A shooting may constitute a seizure for purposes of
the Fourth Amendment.  *Flores v. City of Palacios*, 381 F.3d 391,
396-97 (5th Cir. 2004).  To prevail on a § 1983 excessive force
claim under the Fourth Amendment, a plaintiff must show (1) that he
was seized,[3] (2) that he suffered an injury, (3) which "resulted
directly and only from the use of force that was excessive to the
need, and that (4) the force used was objectively unreasonable."
*Flores v. Palacios*, 391 F.3d 391, 396 (5th Cir. 2004).  "To
determine whether a seizure was objectively reasonable, and thus
whether an injury is cognizable, we ask whether the totality of the
circumstances justified [that] particular sort of search or
seizure," balancing the "amount of force used against the need for
force."  *Id.* at 398-99.  *See also Carnaby v. City of Houston*, 636
F.3d 183, 187 (5th Cir. 2011)("To prevail on a Fourth Amendment

---

[3] A seizure may be shown "by means of physical force or show
of authority" when the officer has "in some way restrained the
liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n.16
(1968).  An officer is required to have reasonable suspicion to
temporarily detain a suspect under the Fourth Amendment. *Id.*
at 16-19.

excessive force claim, a plaintiff must establish: (1) an injury; (2) that the injury resulted directly from the use of excessive force; and (3) the excessiveness of the force was unreasonable." To decide whether the seizure was objectively reasonable, generally the court must ask if the totality of the circumstances justified that kind of search or seizure. *Id., citing Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985).

Nevertheless, the Fifth Circuit has narrowed the test and held that "'[t]he excessive force inquiry is confined to whether the [officer] was in danger at the moment of the threat that resulted in the [officer's] shooting.' Therefore, any of the officers' actions leading up to the shooting are not relevant for purposes of an excessive force inquiry in this Circuit." *Harris v. Serpas*, 2014 WL 960843, at *4, *quoting Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 493 (5th Cir. 2001)("The excessive force inquiry is confined to whether the Trooper was in danger *at the moment of the threat* that resulted in the Trooper's shooting Bazan. '[R]egardless of what had transpired up until the shooting itself, [the suspect's] movements gave the officer reason to believe at that moment, that there was a threat of physical harm [citations omitted [emphasis in original].'"), *citing Young v. City of Killeen*, 775 F.2d 1349, 1353 (5th Cir. 1985)(finding *no* liability where "only fault found against [the officer] was his negligence in creating a situation where the danger of such a mistake would

-11-

exist").[4]   Furthermore the law "does not require the court to determine whether an officer was in actual, imminent danger of serious injury, but rather, whether 'the officer reasonably believe[d] that the suspect pose[d] a threat of serious harm to the officer or to others." *Id.* at *4, *quoting Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 2433 (2011). Furthermore, "'[t]he reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Id.*, *quoting Graham v. Connor*, 490 U.S. 386, 396 (1989).

The objective reasonableness of the force used requires the court to balance the amount of force used against the need for that force. *Id.* at 399. "It is objectively unreasonable to use deadly force 'unless it is necessary to prevent a suspect's escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004), *quoting Tennessee v. Garner*, 471 U.S. 1, 3 (1985).

---

[4] In *Young*, the Fifth Circuit opined, "The constitutional right to be free from unreasonable seizure has never been equated by the Court with the right to be free from a negligently executed stop or arrest.  There is no question about the fundamental interest in a person's own life, but it does not follow that a negligent taking of life is a constitutional deprivation.  The government has the right to employ deadly force under some circumstances, and there are interests to be balanced in deciding the reach of constitutional demand."  775 F.2d at 1353.

See also *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009)("An officer's use of deadly force is presumptively reasonable when the officer has reason to believe that the suspect poses a threat of serious harm to the officer or to others.").   The reasonableness of the force must be judged from the view of a reasonable officer on the scene. *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Moreover, the resulting injury must "be more than a *de minimis* injury and must be evaluated in the context in which the force was deployed." *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001). *See, e.g., Tarver v. City of Edna*, 410 F.3d 745, 751-52 (5th Cir. 2005)(finding plaintiff failed to show requisite injury because he did "not allege any degree of physical harm greater than *de minimis* from the handcuffing"); *Glenn v. City of Tyler*, 22 F.3d 307, 315 (5th Cir. 2001)(concluding that "handcuffing too tightly, without more, does not amount to excessive force").   Only substantial psychological injuries are sufficient to meet the injury element of a claim for excessive force under the Fourth Amendment. *Flores*, 381 F.3d at 397-98.

Qualified immunity, an affirmative defense, protects government officials in their personal capacity performing discretionary functions not only from suit, but from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson v. Callahan*, 555 U.S. 223, ___, 129 S. Ct. 808, 815 (2009).   Thus the Court examines whether the "officer's conduct violated a constitutional right," as well as "whether the right was clearly established" at the time of the conduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Either prong may be addressed first.  *Pearson*, 129 S. Ct. at 808.  A right is clearly established when "the contours of the right [are] sufficiently clear [such] that a reasonable official would understand that what he is doing violated that right." *Werneck v. Garcia*, 591 F.2d 386, 392 (5th Cir. 2009)(citations omitted).  *See also Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007)(the court applies an objective standard "based on the viewpoint of a reasonable official in light of the information available to the defendant and the law that was clearly established at the time of defendant's actions.").   To be clearly established, "'[t]he contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right.'" *Kinney v. Weaver*, 367 F.3d 337, 349-50 (5th Cir. 2004), *quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  "The 'clearly established' standard does not mean that official's conduct is protected by qualified immunity unless 'the very action in question has previously been held unlawful.'"  *Id.* at 350, *quoting Anderson*, 483 U.S. at 640.  "Where no controlling authority specifically

prohibits a defendant's conduct, and when the federal circuit courts are split on the issue, the law cannot be said to be clearly established." *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 2740 (2012). Officials who act reasonably, but mistakenly, are entitled to qualified immunity; the defense protects all government employees but "the plainly incompetent or those who knowingly violate the law." *Anderson*, 483 U.S. at 641; *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "[A] defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir. 2001). The officer is "entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions," even if the conduct violated the plaintiff's constitutional right. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)(*en banc*). "The immunity inquiry is intended to reflect the understanding that 'reasonable mistakes can be made as to the legal constraints on particular police conduct.'" *Pasco v. Knoblauch*, 566 F.3d 572,582 (5th Cir. 2009).

Although qualified immunity is an affirmative defense, once the defendant raises the defense "the burden shifts to the

plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law.'" *Harris v. Serpas*, ___ F.3d ___, No. 13-30337, 2014 WL 960843, at *3 (5th Cir. Mar. 12, 2014), *quoting Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008); *see also Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009).  To meet this burden the plaintiff must allege facts showing that the defendants committed a constitutional violation under the current law and that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the challenged actions.  *Atteberry v. Nocona General Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005).

The Fourth Amendment right to be free from excessive force during a seizure is clearly established.  *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012), *citing Deville v. Marcantel*, 567 F.3d 156, 169 (5th Cir. 2009)(*per curiam*).  Nevertheless excessive force claims are "necessarily fact-intensive and depend on the facts and circumstances of each particular case." *Id.*  As the United States Supreme Court wrote in *Graham v. Connor*, 490 U.S. at *396,

> [T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. Because "[t]he test of reasonableness under the fourth Amendment is not capable of precise definition or mechanical application," however, its proper application requires careful attention to the facts and circumstances of each particular case, including (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or

-16-

others, and (3) whether he is actively resisting arrest
or attempting to evade arrest by flight.

"To make out a Fourth Amendment violation, let alone one that
violates clearly established law, 'the question if whether the
officer's actions are 'objectively reasonable' in light of the
facts and circumstances confronting them, without regard to their
underlying intent or motivation,'" while evaluating the use of
force "'from the perspective of a reasonable officer on the
scene.'" *Poole*, 691 F.3d at 628, *citing Graham v. Connor*, 490 U.S.
at 396.

Municipalities and other bodies of local government are
"persons" within the meaning of § 1983. *Monell v. Department of
Social Services*, 436 U.S. 658, 690 (1978). "A municipality cannot
be held liable *solely* because it employs a tortfeasor--or, in other
words, a municipality cannot be held liable under § 1983 on a
*respondeat superior* theory." *Id.* at 691. *See also Bd. of Cnty.,
Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997)(Section
1983 does not permit a municipality to be held liable for its
officers' actions on a theory of *respondeat superior*."). A
municipality may be liable under § 1983 if the execution of one of
its customs or policies deprives a plaintiff of his constitutional
rights. *Monell*, 436 U.S. at 690-91.

To state a claim for municipal liability under § 1983, a
plaintiff must identify (a) a policy maker, (b) an official policy
[or custom or widespread practice], and (c) a violation of

constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)(a plaintiff must show that the unconstitutional conduct is attributable to the municipality through some official custom or policy that is the "moving force" behind the constitutional violation)(*citing Monell*, 436 U.S. at 694), *cert. denied*, 534 U.S. 820 (2001).  The Fifth Circuit has defined an official policy for purposes of § 1983 as "'[a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's law-making officials or by an official to whom the lawmakers have delegated policy-making authority.'"  *Okon v. Harris County Hospital District*, 426 Fed. Appx. 312, 316 (5th Cir. May 23, 2011), *quoting Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984)(*en banc*), *cert. denied*, 472 U.S. 1016 (1985).[5]  Alternatively, a policy may be "'a persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'"  *Id., citing id.*, and *Zarnow v. City of Wichita Falls*,

---

[5] When a policymaker commits the act at issue, that act may establish the policy if the policymaker is "unconstrained by policies imposed from a higher authority."  *Okon*, 426 Fed. Appx. at 316, *citing Hampton Co. Nat'l Sur. LLC v. Tunica County*, 543 F.2d 221, 227 (5th Cir. 2008).  In such a case the court must determine which official or government body has final policymaking authority for the local government unit regarding the action in dispute. *Id.*

-18-

614 F.3d 161, 169 (5th Cir. 2010)("A pattern of conduct is necessary only when the municipal actors are *not* policymakers")[, *cert. denied*, 131 S. Ct. 3059 (2011)].

"The governing body of the municipality or an official to whom that body has delegated policy-making authority must have actual or constructive knowledge of such a custom." *Okon*, 426 Fed. Appx. at 316, *citing Bennett*, 735 F.2d at 862. "'Actual knowledge may be shown by such means as discussions at council meetings or receipt of written information,'" while "constructive knowledge 'may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity.'" *Id., citing Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984)(*en banc*), *cert. denied*, 472 U.S. 1016 (1985).

Generally "[a]llegations of an isolated incident are not sufficient to show the existence of a custom or policy." *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992). "Usually a plaintiff must show a pattern of similar violations, and in the case of an excessive force claim . . . the prior act must have involved injury to a third party." *Id.; Rodriguez v. Avita*, 871 F.2d 552, 554-55 (5th Cir. 1959). "[A] single incident of an alleged constitutional violation resulting from the policy may

serve as a basis for liability so long as that violation was an obvious consequence of the policy. . . . [A[ pattern of misconduct is not required to establish obviousness or notice to the policymaker of the likely consequences of his decision." *Brown v. Bryan County, OK.*, 219 F.3d 450, 460 (5ᵗʰ Cir. 2000), *citing City of Canton*, 489 U.S. at 396 ("Where a section 1983 plaintiff can establish that the facts available to city policymakers put them on actual or constructive notice that the particular omission is substantially certain to result in the violation of constitutional rights of their citizens, the dictates of *Monell* are satisfied."). In *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986), the Supreme Court held that "municipal liability may be imposed for a single decision by municipal policymakers," for example the legislature, "because even a single decision by such a body unquestionably constitutes an act of official government policy."

Ratification can also be a basis for governmental immunity when an authorized policymaker affirms that in performing the challenged conduct, the employee was executing official policy. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)("[W]hen a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the

municipality because their decision is final."). Whether a governmental decision maker has final policymaking authority is a question of law. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). "It has long been recognized that, in Texas, the county sheriff is the county's final policy maker in the areas of law enforcement, not by virtue of delegation by the county's governing body, but, rather, by virtue of the office to which the sheriff has been elected." *Turner v. Upton County*, 915 F.2d 133, 136 (5th Cir. 1990)(*citing Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir. 1980))(*citing Monell*, 436 U.S. at 694), *cert. denied*, 498 U.S. 1069 (1991); *Bennett v. Pippin*, 74 F.3d 578, 586 (1996), *cert. denied*, 519 U.S. 817 (1996).

"Deliberate indifference" is a "stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action," for which "[a] showing of simple or even heightened negligence will not suffice"; it requires a plaintiff to show that "'in the light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *Valle v. City of Houston*, 613 F.3d 536, 547 (5th Cir. 2010)(*quoting City of Canton*, 489 U.S. at 390), *cert. denied*, 131 S. Ct. 2094 (2011).

Inadequate police training or supervision can be the basis of municipal liability under § 1983 if the failure to train amounts to deliberate indifference to the constitutional rights of persons with whom the police come into contact. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009).  The standards for failure to supervise and failure to train claims are the same. *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009).   "[T]here are limited circumstances in which an allegation of failure to train amounts to deliberate indifference to the rights of persons with whom the police come in contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989).   To show deliberate indifference in the defendant's failure to train requires the plaintiff to prove that the city policymaker disregarded "'known or obvious consequence of his action,' and that a particular omission in their training program would cause city employees to violate citizens' constitutional rights." *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011). To demonstrate deliberate indifference a plaintiff must show that "the failure to train reflects a 'deliberate' or 'conscious' choice to endanger constitutional rights." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005).   Moreover a single incident is usually insufficient to establish deliberate indifference: a pattern of similar incidents in which citizens were injured is required. *Id.* at 382-83.   "[W]hen city policy makers are on actual or

constructive notice that a particular omission in their training program causes city employees to violate citizens' rights, the city may be deemed deliberately indifferent if the policy makers choose to retain that program.  The city's 'policy of inaction' in light of notice that its program will cause constitutional violation 'is the functional equivalent of a decision by the city itself to violate the Constitution.'"  *Id.* at 1360, *citing Canton*, 489 U.S. at 395.  Moreover municipal liability can only be imposed "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts injury. . . ."  *Monell,* 436 U.S. at 694.  To support a failure to train claim, the plaintiff must show (1) "the municipality's training policy or procedure was inadequate; (2) the inadequate training policy was a 'moving force' in causing violation of the plaintiff's rights; and (3) the municipality was deliberately indifferent in adopting its training policy."  *Valle v. City of Houston*, 613 F.3d 536, 544 (5th Cir. 2010).  Furthermore, to prevail on a failure to train claim under § 1983, the plaintiff must show specific inadequacies within the training program and that the inadequate training represents city policy.  *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005).  [I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in

the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton,* 489 U.S. at 390.   A municipality may be liable for the failure of a policymaker to take precautions to prevent harm, provided that the omission is an intentional choice and not merely a negligent oversight.   *Id.* Negligent training will not support a § 1983 claim against a municipality; nor is it sufficient to show that "injury or accident could have been avoided if an officer had better or more training." *Id.* Moreover the plaintiff must demonstrate that "the identified deficiency in a city's training program must be closely related to the ultimate injury."   *Id.*

The Fifth Circuit has held that "compliance with state requirements is a factor counseling against a 'failure to train' finding." *Zarnow v. City of Wichita Falls, Tex.,* 614 F.3d 161, 171 (5th Cir. 2010), *citing Conner v. Travis Cnty.*, 209 F.3d 794, 798 (5th Cir. 2001), cert. denied, 131 S. Ct. 3059 (2010).

A plaintiff may not obtain punitive damages in a suit under § 1983 from a municipality, but may in a suit against an official in his personal capacity.   *Kentucky v. Graham*, 473 159, 167 n.13 (1985), *citing Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981), and *Smith v. Wade*, 461 U.S. 30 (1983).

Plaintiffs assert that Katrib and Denham assaulted and battered them in violation of Texas common law.   Government

-24-

employees in their individual capacities may assert the affirmative defense of official immunity[6] from suit for state law claims, such as assault and battery, arising from performance of (1) their discretionary duties performed in (2) good faith" as long as they are acting within the scope of their authority. *City of Lancaster v. Chambers*, 883 S.W. 3d 650, 653 (Tex. 1994). The defendant bears the burden of establishing all of its elements. *Id.* The focus is whether the officer is performing a discretionary function, not whether he has discretion to do an allegedly wrongful act while performing that function. *Id.* "The purpose of the doctrine of official immunity is to protect public officers from civil liability for conduct that would otherwise be actionable." *Id.* at 653-54. A discretionary act is one requiring "personal deliberation, decision and judgment," as opposed to ministerial acts which "require obedience to orders or the performance of a duty to which the actor has no choice." *Id.* at 654. Among cases

---

[6] Official immunity is also called "qualified immunity," "quasi-judicial immunity," "discretionary immunity," and "good faith immunity." *Methodist Hospitals of Dallas v. Miller*, 405 S.W. 3d 101, 104 n.5(Tex. App.--Dallas 2012). Like qualified immunity under § 1983, official immunity "render[s] officials immune from both liability and suit." *Id.* at 105, *citing Ballantyne v. Champion Builders, Inc.*, 144 S.W. 3d 417, 422 (Tex. 2004). On summary judgment the party moving for official immunity bears the burden of establishing that he was (1) a government officer or employee, (2) sued in his individual capacity, entitled to official immunity from a suit arising from (3) performing a discretionary duty (4) in good faith (5) within the scope of his authority. *Id.* at 106, *citing Telthorster v. Tennell*, 92 S.W. 3d 457, 461 (Tex. 2002).

cited by the Texas Supreme Court in *City of Lancaster*, finding police officers exercising discretion in certain contexts, are *Dent v. City of Dallas*, 729 S.W. 2d 114, 117 (Tex. App.--Dallas 1986, writ ref'd n.r.e.)(holding officer was performing discretionary act in deciding when and how to arrest suspect), *cert. denied*, 485 U..S. 977 (1988), and *Vasquez v. Hernandez*, 844 S.W. 2d 802, 804-05 (Tex. App.--San Antonio 1992, writ dism'd w.o.j.)(holding officer's positioning himself next to his patrol car with gun drawn and then firing was a discretionary use of deadly force). 883 S.W. 2d at 654. Because to warrant federal qualified immunity "those cases in which a federal court extends immunity to a police officer necessarily determine that the disputed actions are discretionary." *Id., citing Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "The decision to pursue a particular suspect will fundamentally involve the officer's discretion, because the officer must, in the first instance, elect whether to undertake pursuit." *Id.* at 55.

The Texas Supreme Court established the following test to determine the good faith element of official immunity as a "fair balance between the competing interests at stake": "an officer acts in good faith in a pursuit case if . . . a reasonably prudent officer under the same or similar circumstances, could have believed that the need to immediately apprehend the suspect outweighed a clear risk of harm to the  public in continuing the pursuit." *Id.* at 656. It does not inquire what a reasonable

-26-

person believed, but what a reasonable person *could have believed*.
*Telthorster*, 92 S.W. 3d at 465.  Good faith is measured "against a
standard of objective legal reasonableness, without regard to the
officer's subjective state of mind." *Wadewitz v. Montgomery*, 951
S.W. 2d 464, 466 (Tex. 1997), *citing City of Lancaster*, 883 S.W. 2d
at 653.  The key difference between the federal test for qualified
immunity and the state of Texas's test for official immunity is
that the latter does not include the requirement that the right
alleged to have been violated was clearly established.  *Cantu v.
Rocha*, 77 F.3d 795, 808-09 (5th Cir. 1996), *citing City of
Lancaster*, 883 S.W. 2d at 657.

The rationale for providing official immunity rests on the
need for public officials "to act in the public interest with
confidence and without hesitation that could arise from having
their judgment continually questioned by extended litigation."
*Ballantyne v. Champion Builders, Inc.*, 144 S.W. 3d at 424.  The
existence of qualified immunity acknowledges that public officials
may err in performing their duties, but "recognizes that the risk
of some error is preferable to intimidation from action at all."
*Id.*

There is some confusion and merging in the definitions of
assault and battery under Texas caselaw.  *Waffle House, Inc. v.
Williams*, 313 S.W. 3d 796, 801 n.4 (Tex. 2010)("[I]n the civil
context, Texas caselaw uses the term 'assault,' 'battery,' and

-27-

'assault and battery' interchangeably, and we intend no distinctions among these terms."). A person commits an assault if he intentionally and knowingly causes offensive physical contact with another. *Id.* at 801. *See also, e.g., Doe v. Beaumont I.S.D.*, 8 F. Supp. 596, 616 (E.D. Tex. 1998)(The elements of battery under Texas common law are (1) a harmful or offensive contact (2) with a plaintiff's person.), *citing Price v. Short*, 931 S.W. 2d 677, 687 (Tex. App.--Dallas 1996, n.w.h.)(The elements of assault under Texas common law are (1) apprehension of (2) an immediate battery.); *Cox v. Waste Management of Texas, Inc.*, 300 S.W. 3d 434, (Tex. App.--Fort Worth 2009)(To prevail on a claim of assault, a plaintiff must show that the defendant "(1) intentionally, knowingly, or recklessly caused him bodily injury, (2) intentionally or knowingly threatened him with imminent bodily injury, or (3) intentionally or knowingly caused physical contact with him when [the defendant] knew or should have reasonably believed that he would regard the contact as offensive or provocative."); *Hall v. Sonic Drive-In of Angleton, Inc.*, 177 S.W. 3d 636, 649-50 (Tex. App.--Houston [1st Dist.] 2005)(same). Another court wrote, "[I]t has long been settled that there can be a battery without an assault, and that actual physical contact is not necessary to constitute a battery so long as there is contact with clothing or an object closely identified with the body." *Fisher v. Carrousel Motor Hotel*, 424 S.W. 2d 627, 629 (Tex. 1967). *See also*

*Price v. Short*, 931 S.W. 2d 677, 687 (Tex. App.--Dallas 1996, not writ)("Battery does not require an assault.  Battery requires only an offensive touching, not an intent to injure."). *See also Vaughn v. Drennon*, 372 S.W. 3d 726, 733 (Tex. App.--Tyler 2012)(threatening someone with a gun is an assault).  The elements of assault are the same in civil and criminal cases. *Morgan v. City of Alvin*, 175 S.W. 3d 408, 418 (Tex. App.--Houston [1st Dist.] 2004, no pet.), *citing Forbes v. Lanzl*, 9 S.W. 3d 895, 899 (Tex. App.--Austin 3000, pet. denied).

**V.  Katrib and Denham's Motion for Summary Judgment (#42)**

Denying that any constitutional violation occurred or that they are liable to Plaintiffs in any amount on any theory, Katrib and Denham, in their individual capacities, assert they are entitled to qualified immunity on Plaintiffs' Fourth Amendment constitutional claim and to official immunity on Plaintiff's state-law assault and battery claim.  Nevertheless they maintain that the Court does not need to reach the qualified immunity analysis because Plaintiff cannot prove that their Fourth Amendment rights were violated on January 19, 2010.  Defendants submit their own affidavits with resumes attached (Katrib, Ex. A; Denham, Ex. B), which delineate in detail their education, extensive police training, and police experience, to which the Court refers the parties rather than repeat *in toto*.  They also offer an affidavit from law enforcement expert Jared Zwickey ("Zwickey")(Ex. C), and

a copy of the indictment of Boston for aggravated assault against a public official and a copy of dismissal of that indictment on the grounds that he was convicted in another criminal case (Ex. D).[7]

Katrib and Denham's version of what happened, supported by their affidavits, is very different from that alleged in Plaintiffs' complaint. As stated in their affidavits and not controverted by any evidence from Plaintiffs, Katrib has been employed as a deputy sheriff in the Harris County Sheriff's office since December 11, 2004 and was assigned to the Narcotics Division at the time of the incident on January 19, 2010. Denham has been certified as a peace officer by the State of Texas since October 21, 2005, has met all the statutory standards for licensure and for the Texas Commission on Law Enforcement Officer Standards and Education ("TCLEOSE") and is certified as Basic and Intermediate Peace Officer and Basic Instructor. On January 19, 2010, both men, dressed as plain clothes police,[8] were working an approved extra job at the Cambridge Crossing Apartments ("the Complex"), located in Houston, Texas, as they both had been for approximately three

---

[7] In its motion for summary judgment (#43), Harris County submits evidence of this indictment and its dismissal and of numerous convictions of Boston for drug violations, as well as for assault and theft.

[8] Katrib states that he was wearing a dark colored cap, dark colored t-shirt and blue jeans. #57, Ex. A. Denham states that he was wearing a light blue t-shirt and jeans. #57, Ex. B. Boston's declaration states, "The person that was pounding on my window never identified themselves, they were in plain clothes with a black t-shirt and blue jeans shorts." #52-3.

years, to enforce state law.  Both men declared that the Complex is in a high crime area that has a history of gang activity, weapons, drugs, and burglaries.[9]

The rest of the contents of Katrib's and Denham's affidavits are contested, if largely conclusorily, by Boston and Randle. Katrib and Denham state that Katrib was wearing his Sheriff's office badge in a holder on a chain around his neck outside of his shirt.[10]  The two officers both attest that it was dark when Katrib drove his silver Ford F-150 Club Cab pickup truck, with Denham in the front passenger seat, into the Complex parking lot with overhead security lighting when Katrib spotted a red Monte Carlo with its dome light on parked in a parking spot with three people inside.  Katrib stated that he saw the driver hunched over in his seat and, based on his experience and training as a narcotics officer, believed the person was rolling a marijuana cigarette. Acting within the course and scope of his employment and authority with the Sheriff's office, he decided to investigate.  He stopped his truck just past the Monte Carlo, told Denham that he suspected the  driver was in possession of contraband, and that he was going to talk to him.  Getting out of the truck with a flashlight in his

---

[9] Plaintiff Boston's declaration, attached to his response (#52-3), also states that "the neighborhood is very well known for crime."

[10] Boston declares that he "never saw a badge," but not that Boston was not wearing one.  #52-3.

hand, he approached the driver's side door.  He states that his service pistol was concealed in a holster under his shirt.  As he approached, his attests that the driver's window was slightly down and that he smelled the strong odor of burning marijuana.  He shined his flashlight into the window of the car and said, "Sheriff's Office, roll your window down."  The driver did not comply.  Katrib then saw the driver move toward the floorboard in between his legs.  Katrib repeated his order, but the driver did not comply, so Katrib tapped on the window with the bottom of his flashlight to get his attention, to no avail.  He states because the driver ignored him and because based on his training and experience he knew that people who deliberately ignore an officer are often involved in criminal conduct, he believed that the driver was involved in drug activity.  Instead of following Katrib's order, the driver put his car in reverse and started to back up. The left front tire ran over Katrib's foot, while the left front fender hit his left knee and knocked him to the ground in great pain.  The chain on his badge got caught in the side view mirror and was snapped off his neck because of the speed of the car. Katrib states that he saw his right arm was bleeding and that his foot hurt.  He then heard the car engine revving and saw the car coming toward him.  Katrib heard gunshots but did not know where the shooter was.  Still on the ground, Katrib believed the car was about to run over him as it came at him, so he got up in fear for

his life and fired at the driver.  The driver changed directions and Katrib stopped firing, as the car sped off south bound on Dairy Ashford.  In pain, he was treated by EMS at the scene and advised to see his physician.  He states, "I have seen people get hit by cars and get seriously injured or die.  I was afraid that I would be seriously injured or die as a result of Plaintiff's actions, and that is why I discharged my weapon."  After learning that the other shots he heard were fired by Denham, he stated, "I believe Deputy Denham saved my life by firing his weapon as well."  He ends stating that his decision to approach the vehicle and to use deadly force in response to Boston's actions were with the scope of his discretion as a peace officer.

In his affidavit (#42, Ex. B), Denham adds that when Katrib got out of the truck, Denham went to the rear door of the truck to get his vest and handcuffs out of the back seat, but then heard the car going into reverse and saw it backing up out of the corner of his eye.  He saw Katrib on the driver's side of the Monte Carlo and that as the car backed up, the car hit Katrib and Katrib fell

> on the ground, on his butt about four feet in front of
> the car.  Then the vehicle started to move forward toward
> Deputy Katrib. . . . . Because I didn't think Deputy
> Katrib could get out of the way, and because of the
> imminent threat of death or serious bodily injury which
> would result if Deputy Katrib were run over by the car,
> I discharged my weapon at the driver's side of the car
> through the passenger side.  At the time I discharged my
> weapon, I was in the course and scope of my employment
> and authority with the Sheriff's Office.  My decision to
> use deadly force against Plaintiff Don Boston, the driver
> of the car, was discretionary.  I had to make a split

second decision as to whether to discharge my weapon in
a situation which was tense and uncertain.  I have seen
people get hit by cars before and I know that being hit
by a car can cause death or serious bodily injury.  I
fired seven times before my last round failed to feed
properly.  The car then drove off without stopping,
speeding out the main entrance and turning southbound on
Dairy Ashford.

Denham states that he radioed the Sheriff's Office Dispatch that

shots had been fired, identified the location, described the

suspect vehicle and the direction it had gone, and requested EMS

help for Katrib.  He states, "Each of the actions I took on January

19, 2010 in connection with the incident made the basis of this

lawsuit was taken in good faith."

In their complaint Plaintiffs allege they did not see or hear

Katrib and Denham and heard only the sounds of shooting and that

they did not know that they hit Katrib.[11]

---

[11] In a supplement to its motion for summary judgment, as
evidence to the contrary, Harris County provides a CD of the
audio recordings of HPD's interviews of the three Plaintiffs at
the hospital where they went to have their bullet wounds
attended.  #46.  During Boston's interview, the motion asserts,
and the recording  and HPD records (#63, Ex. 68) support, the
following about Katrib, #43 at pp. 23-24,

66.  Boston said, "a guy was beating on the--boom,
boom, boom, boom, boom, beating on the window and I was
trying to get out of there . . . without me being shot
or left for dead."  Boston said, I put the car in
reverse and I guess *as I was running over* I, the guy
was just beating on the, 'boom boom boom,' like people
were trying to break the window and get inside or
something. . . .
67.  Boston said that he guessed the car rolled over
the guy's foot.  Boston said, "I think the guy fell and
grabbed his foot, jumped right back up.  It wasn't no
serious shit like that, many, it wasn't

Katrib and Denham claim they are entitled to qualified and official immunity from Plaintiff's claims.

A.  **Response**

As noted, Randle did not file a response.  Harris County points out that she also failed to respond to any discovery despite a court order (#63) or to appear for deposition scheduled by Defendants and argues that she has therefore abandoned her claims pursuant to Fed. R. Civ. P. 41(b).  #39, 40, 47, 51, 55, and 63.

Boston, who now asserts only a claim for excessive force, conclusorily objects (#52) to the facts asserted in Defendants' affidavits as summary judgment evidence.  Without evidentiary

---

[unintelligible] . . . Boston "just heard--I saw the guy kind of-I don't know--yeah, I guess it rolled over his food or something.  I don't know man.  It ain't no damage."

During her interview, #43 at pp. 26-28, supported by the audio recording and HPD records (#43, Ex. 68 and 69-1 Ex. B), Randle told police that she had smoked "weed" before she got into the Monte Carlo with Boston and Johnson and that she smelled a "strong smell of weed" in the car.  She further stated that she believed that Boston was going to do a "dope deal" at the apartment complex that evening and that Boston called someone and said, "I am going to pull up in three minutes, fool."  While they were parked in the Complex's parking lots, she reported that she saw lights coming through the side window of the car and "they started to bang on the window." She heard Boston say, "Oh shit," and "mash on the gas."  By the time they started she heard gun shots.  She also said that it sounded as if Boston hit someone or somebody, that Boston bumped the person as he was turning around, that it sounded like "the bump of a human because the car was low" and the sound came from the bottom part near the front of the grill.  #69-1, Ex. B at p. 12 (""It sounded like he kind of bumped the man, hit something or I don't know because I was sitting in the back but all I know, they just started busting . . . . ").

support, such a conclusory charge cannot raise a genuine issue of material fact for trial.   The only summary judgment evidence he identifies and relies on, however are his own attached declaration and a portion of a police report regarding the bullet trajectories in the Monte Carlo that is not contrary to Katrib and Denham's testimony.   In essence, Boston's declaration states,

> On January 19, 2010, myself, Sharonda Johnson and Sunshine Randle were waiting for a friend in the parking lot of the Cambridge Crossing Apartments in Houston, Texas.   I saw a shadow behind my car and I got scared and attempted to put the car in reverse but the emergency brake was engaged.   At that point I heard loud and frantic pounding on the front driver's side windshield of the vehicle with an unknown object, although my passengers were screaming that he was hitting the windshield with a gun, I was attempting to drive and focus on getting us to safety.   The person that was pounding on my windshield never identified themselves, they were in plain clothes with a black t-shirt and blue jean shorts, I never saw a badge, and the neighborhood is very well known for crime.   I never saw who it was nor did I hear anything.   I was scared and in a state of panic.   All of the sudden bullets started flying from two people outside the vehicle and I was hit.   I fled the parking lot and attempted to drive to the hospital but I became dizzy from the pain.   I went to my friend Frank Chauncey's house and he called an ambulance and we were taken to the hospital.   We were detained by the police stating that the people that were shooting at us were undercover police and officers.   This is the first time that I became aware that the people that were pounding on my car window with their guns and shot at me were police officers because they never had identified themselves to me or anybody else in the vehicle as police officers.

Boston does object to Defendants' submission of expert Jared Zwickey's affidavit, which "relies solely on Defendants' version of events," and should not be admissible because it offers subjective opinions that are not helpful to the jury.   After reviewing

Zwickey's affidavit, the Court finds that he has established his expertise as an expert on law enforcement procedures and may testify as to what procedures are accepted conduct in response to various conditions a police officer may face, but that he may not opine about whether the Katrib's and Denham's conduct during this incident was reasonable under the circumstances. Rule 704 abolished the *per se* rule against testimony regarding ultimate issues of fact," but it does not allow an expert witness to express legal conclusions or tell a jury what result it should reach. *Owen v. Kerr-McGee Corp.*, 698 F. 2d 236, 239-40 (5th Cir. 1983). *See also Snap-Drape, Inc., v. Comm'r*, 98 F.3d 194, 198 (5th Cir. 1996)(Rule 704 does not permit an expert to offer a conclusion of law.). "Reasonableness under the Fourth Amendment . . . is a legal conclusion." *U.S. v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003); *U.S. v. Teel*, 299 Fed. Appx. 387 (5th Cir. 2008)("the district court properly barred Teel's expert from going beyond consideration of the conduct to offer legal conclusions regarding whether the assault on Williams constituted excessive force"). An expert will not be helpful to a jury when the jury can resolve fact issues without the aid of expert testimony. *U.S. v. Christian*, 673 F.3d 702, 710 (7th Cir. 2012)("[A] layperson needs no expert assistance to understand how one would have to move his arms to pull something out of this waistband" and "a witness should not be allowed to put an 'expert gloss' on a conclusion that the jurors should draw

themselves."). "'Expert testimony does not assist where the jury has no need for an opinion because it easily can be derived from common sense, common experience, the jury's own perceptions, or simple logic." Id., citing 29 Charles Alan Wright and James Gold, *Federal Practice & Procedure* § 6264 (1997). Moreover, "[a]n expert is not in better position than the jury to evaluate credibility and states of mind." *Marlin v. Moody Nat'l Bank, N.S.*, 248 Fed. Appx. 534, 541 (5th Cir. Sept. 19, 2007). The Court agrees with Boston that Zwickey's affidavit does cross this line a number of times. Because it is the Court who is examining the evidence on summary judgment, however, it ignores the inadmissible portions of the testimony.

**C. Defendants' Motion to Strike and Reply (#57)**

Defendants moved to strike Don Boston's declaration based on Boston's continuous failure to appear for noticed depositions, and Magistrate Judge Frances Stacy, upon referral of the motion, struck Boston's Declaration because he repeatedly failed to make himself available for deposition or obey the court's orders compelling discovery. #67.

Moreover, Boston's declaration focuses on his reaction to the events as alleged. As noted by Defendants and pointed out by the Court in its summary of relevant law, the reasonableness of a police officer's use of force is not determined though the eyes of the recipient of the force as he perceived it, but through the eyes

of a reasonably prudent officer at the scene, an objective standard. *Graham v. Connor*, 490 U.S. at 396.   Thus even if the Magistrate Judge had not struck Boston's declaration, it is not relevant and does not support Boston's excessive force claim.

Defendants correctly point out that Plaintiff's exhibit of a portion of the investigative police report regarding bullet trajectories is not admissible.   It is merely an excerpt from a larger document, there is no affidavit from any custodian of records authenticating it, and it is hearsay and must be excluded under Fed. R. of Evid. 802.

Boston's objection to the TCLEOSE records for Katrib on the grounds that his training is irrelevant to the lawsuit is contrary to the law, as pointed out by Defendants.   The Supreme Court has ruled that in determining the totality of the circumstances, a police officer is entitled to rely on his experience and specialized training in the use of force to make inferences from and deductions about the cumulative information available to him that might well elude an untrained person.   *U.S. v. Arvizu*, 534 U.S. 266, 273 (2002), *quoting U.S. v. Cortez*, 449 U.S. 411 (1981).   *In accord, U.S. v. Pack*, 612 F.3d 341, 361 (5th Cir. 2010), *modified on other grounds on denial of rehearing*, 622 F.3d 383 (5th Cir. 2010), *cert. denied*, 131 S. Ct. 620 (2010).[12]

_____

[12]   As noted by the Court, "compliance with state requirements is a factor counseling against a 'failure to train' finding."   *Zarnow,* 614 F.3d at 171, *citing Conner v. Travis*

**D.  Court's Decision**

Regarding Randle's claim of unlawful detention, she has failed to respond to the motion for summary judgment and provided no admissible summary judgment evidence to support it.  Allegations in a plaintiff's complaint are not evidence.  *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996)("[P]leadings are not summary judgment evidence."); *Johnston v. City of Houston, Tex.,* 14 F.3d 1056, 1060 (5th Cir. 1995)(for the party opposing the motion for summary judgment, "only evidence--not argument, not facts in the complaint--will satisfy' the burden."), *citing Solo Serve Corp. v. Westown Assoc.*, 929 F.2d 160, 164 (5th Cir. 1991).  The nonmovant must "go beyond the pleadings and by [his] own affidavits, or by depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue of material fact for trial."  *Giles v. General Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001), *citing Celotex*, 477 U.S. at 324.  Randle has failed to do so.

As noted, police officers may stop and briefly detain an individual for investigative purposes based on specific and articulable facts and rational inferences that criminal activity may be occurring.  *Abdo*, 733 F.3d at 565, *citing Terry v. Ohio*, 393 U.S. at 21 (1958).  Only reasonable suspicion is required to justify such an intrusion, a standard less than probable cause

_____

*Cnty.*, 209 F.3d at 798.

(required for an arrest).  *Id., citing United States v. Saunders*, 994 F.2d 200, 203 (5th Cir. 1993).   The reasonableness of a stop is assessed by "conducting a fact-intensive, totality-of-the circumstances inquiry" and "the information available to the officer[s] at the time of the decision to stop a person." *Davila v. U.S.*, 713 F.3d 248, 258  (5th Cir. 2013), *citing U.S. v. Rodriguez*, 564 F.3d 735, 741 (5th Cir. 2009).  The right to make an investigatory stop "carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Davila v. U.S.*, 713 F.3d 248, 259-60  (5th Cir. 2013), *citing Graham v. Connor*, 490 U.S. 386, 396 (1989).  In attempt to determine the reasonableness of a *Terry*-stop, the court should try to put itself "in the shoes of a reasonable police officer as he or she approaches a given situation and assesses the likelihood of danger in a particular context." *U.S. v. Rideau*, 969 F.2d 1572, 1574 (5th Cir. 1992)(*en banc*). *cited for that proposition in Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 845 (5th Cir. 2009), *cert. denied*, 131 S. Ct. 66 (2010).

The Court finds that Katrib and Denham have articulated facts and made reasonable inferences based on their training and experience as Harris County Sheriff Office deputies, justifying their investigative stop of the red Monte Carlo based on reasonable suspicion.  None of the facts recited in their affidavits has been controverted by admissible evidence by Plaintiffs.  Both men are

experienced deputy sheriffs for Harris County, and Katrib has experience in the Narcotics division. They were dressed in plain clothes, working approved extra jobs in a high crime parking lot known for drug activity and were acting within the scope of their authority. Drawing on his experiences as a narcotics officer, Katrib inferred from Boston's action in the Monte Carlo that he was rolling a marijuana cigarette. When he went to the driver's window he smelled burning marijuana, identified himself as a sheriff's office employee and ordered Boston to roll down the window.

Moreover, as noted by the Defendants, although there may have been an effort to stop Plaintiffs for investigation, here there was no detention and the fourth Amendment was not implicated because Plaintiffs were not physically restrained nor did they submit to Defendants' authority, but fled from the scene. Not only do Defendants' affidavits evidence the flight, but Plaintiffs judicially admit they fled the parking lot in their First Amended Complaint and in their interviews by police in the hospital. #14 at p.3; #43..

The Court finds Plaintiff Randle have failed to establish a genuine issue of material fact as to her unlawful detention claim and that summary judgment should be granted in favor of Katrib and Denham on the claim.

Plaintiffs have also failed to submit any admissible evidence to raise a genuine issue of material fact that Defendants used

excessive force against them, when in a reasonable belief that there was an imminent threat of death or serious bodily harm to Katrib, Defendants shot into Plaintiffs' car after Boston drove toward Katrib, on the ground, injured, four feet away.  Therefore Katrib and Denham are entitled to summary judgment in their favor on that claim.

While the Court agrees with Katrib and Denham that Plaintiffs have failed to show a Fourth Amendment violation here, or even raise a genuine issue of material fact whether one occurred here, and therefore it need not address Defendants' entitlement to qualified immunity from the claim, the Court notes that it is clear that they would be shielded under the circumstances here. Although the Fourth Amendment constitutional right was clearly established at the time, Katrib and Denham did not violate it.  To show a violation of the Fourth Amendment right to be free from excessive force, a plaintiff must demonstrate "(1) an injury (2) which resulted from the use of force that was clearly excessive to the need and (3) the excessiveness of which was objectively unreasonable." *Rockwell v. Brown*, 664 F.3d 985, 9991 (5th Cir. 2011). "'Use of deadly force is not unreasonable when an officer would have reason to believe that the suspect poses a threat of serious harm to the officer or others.'" *Williams v. City of Cleveland, Miss.*, 736 F.3d 684, 688 (5th Cir. 2013), *quoting Mace v. City of Palestine*, 333 F.3d 621, 624 (5th Cir. 2003).  Moreover,

the Fifth Circuit has repeatedly held that when a defendant pleads qualified immunity and shows that he is a governmental official whose performance involves the use of discretion, he does not have to prove that he did not violate clearly established rights; instead the plaintiff bears the burden of rebutting that defense by proving that the official's allegedly wrongful conduct violated clearly established law. *Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997); *Thompson v. Upshur Cnty., Tex.*, 345 F.3d 447, 456 (5th Cir. 1997); *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). Plaintiffs have failed to do so here.

Randle has not responded to the motion for summary judgment on her common-law assault and battery claim against Katrib and Denham. As noted, "'Texas law of official immunity is substantially the same as federal qualified immunity law.'" *Hobart v. City of Stafford*, 784 F. Supp. 2d 732, 760 (S.D. Tex. 2011), *quoting Wren v. Towe*, 130 F.3d 1154, 1160 (5th Cir. 1997). These police officers assert that they have official immunity from this claim. Their affidavits are evidence that they were acting within the scope of their authority and discretion from the Sheriff's Office and, as evidenced as well by case law, were performing a discretionary function, requiring a personal decision and judgment in the stopping Plaintiffs under the circumstances described, and in their split-second responses in shooting at Plaintiffs in view of the imminent potentially deadly force aimed at Katrib by Plaintiffs.

-44-

"The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. at 396-97. "Once a public official invokes his entitlement to immunity, the burden is on the plaintiff to demonstrate that it does not apply." *McClendon v. City of Columbia*, 305 F. 3d 314, 323 (5th Cir. 2001). Randle has presented no evidence to raise a genuine issue of material fact about their entitlement to immunity from her claim.

Therefore the Court will grant summary judgment in favor of Katrib and Denham against Randle and Boston.

**VI.  Harris County's Motion for Summary Judgment (#43)**

Adopting the arguments and authorities made and cited by Katrib and Denham, Harris County contends that Plaintiffs cannot show, no less raise a genuine issue of materia fact showing, that their harm was caused by a constitutional violation and that the County is responsible for such a violation, and therefore Harris County is entitled to summary judgment in its favor.  Its two-volume motion contains substantial evidence of Boston's, Johnson's and Randle's criminal histories.

**A.  Response (#53)**

Again Randle did not file a response.

Boston's response (#53) argues that Harris County's exhibits

-45-

are not relevant evidence under Federal Rule of Evidence 401 and thus are inadmissible under Rule 402 because whether Plaintiff is good or bad is irrelevant to whether his constitutional rights were violated.   He also submits a short appendix comprised of four general and conclusory objections, including the above, to the County's evidence.   He contends that the information about the officer's training, specifically their TCLEOSE records, is irrelevant and inadmissible.   The Court has previously overruled that objection and does so her.   Finally he asserts that the interviews are hearsay or contain hearsay under Federal Rule of Evidence 801 and are therefore inadmissible under Rule 802.

## B.  Harris County's Amended Reply (#69)

The Court is aware that Boston and Defendants agreed (#34 and 35) that if the Court determined that there was no genuine issue of material fact whether Katrib and Denham violated Plaintiffs' constitutional rights, the Court would enter final judgment without addressing the issues of custom, pattern or practice to establish whether the County was liable.   Although the other Defendants did not participate in this agreement, it is logical that where the police officers inflicted no constitutional violation on Defendants, the issue of municipal liability is moot.  *Ballard v. Hedwig Village Police Dept.*, No. H-08-0567, 2009 WL 2900737, at *14 (S.D. Tex. Sept. 2, 2009)(*citing City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986), *aff'd*, 408 Fed. Appx. 844 (5th Cir. 2011).

-46-

Harris County reiterates, "'An officer's use of deadly force is not excessive and thus no constitutional violation occurs, when the officer reasonably believes that the suspect poses a threat of serious harm to the officer or to others.'" *Rockwell v. Brown*, 664 F.3d at 991, *citing Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009). Plaintiffs have failed to demonstrate that they sustained an injury that resulted directly and only from the use of force that was clearly excessive by Katrib and Denham and that was clearly unreasonable. Therefore they cannot show their injury was caused by a constitutional violation. Here the admissible summary judgment evidence shows that Katrib and Denham fired their weapons in self defense only when Boston immediately threatened Katrib's life with the Monte Carlo. As noted Boston's evidence was stricken from the record. Because the officers are not liable, the County cannot be liable for inadequate training and supervision.

Also in its response, Harris County urges that Boston's objections to the officers' TCLEOSE records be disregarded and that the records are admissible for several reasons. First Boston waived this objection when he failed to brief and argue it. Second, the officers' records are relevant and admissible as they relate to Boston's excessive force claim. As noted, in determining what kind of force is appropriate given the totality of the circumstances, a police officer may rely on his experience and specialized training to make inferences from and deductions about

the cumulative information available to him that an untrained person might not realize. *Arvizu*, 534 U.S. at 273.  Katrib's and Denham's training, including that in the use of force and deadly force, is directly relevant to the issues in this case and the TCLEOSE records document training in the use of force and deadly force.  As for the evidence of the hospital interviews, Boston fails to specify what he vaguely considers inadmissible hearsay and has thus waived the objection,  Moreover the statements of Boston and Randle are admissions of party opponents and not hearsay under Fed. Rule of Evid. 801.  The Court agrees and overrules Boston's objections.

## C.  Court's Determination

Although there is evidence that Plaintiffs suffered injury, there is no evidence that those injuries "resulted directly and only from a use of force that was clearly excessive to the need" and objectively unreasonable.  Here the uncontroverted, competent summary judgment evidence shows that Katrib and Denham used deadly force in self defense when they reasonably believed that Boston posed a threat of serious harm to Katrib and had to make a split-second decision immediately after Boston ran over Katrib and knocked him to the ground in the red Monte Carlo under rapidly evolving circumstances.  The Court further agrees with Harris County that under the competent uncontroverted summary judgment evidence, Katrib's and Denham's actions were objectively

reasonable.

Moreover, because Plaintiffs fail to raise a genuine issue of material fact as to whether Katrib and/or Denham violated Plaintiffs' constitutional rights under the Fourth Amendment, their claims against Harris County are moot.

**VII. Order**

For the reasons stated above, the Court

ORDERS that the motions for summary judgment filed by Officers Katrib and Denham (#42) and by Harris County (#43) are GRANTED. Final judgment will issue by separate order.

**SIGNED** at Houston, Texas, this __26th__ day of __March__, 2014.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE